1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ARCHIE CASTELLANO,                        No. 2:19-cv-02030 DB

12                  Plaintiff,

13          v.                                   ORDER AND FINDINGS AND
                                                 RECOMMENDATIONS
14   J. SHRUM, et al.,

15                  Defendants.

16

17          Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42

18   U.S.C. § 1983.  Plaintiff claims defendants failed to provide him with adequate medical care

19   when he experienced a medical emergency on August 20, 2018.  (ECF No. 1 at 3, 5.)

20   Presently before the court is defendants' fully briefed motion for summary judgment.  (ECF

21   No. 32.)  For the reasons set forth below, the undersigned will recommend that the motion for

22   summary judgment be granted in part and denied in part.

23                                   **BACKGROUND**

24   **I.      Relevant Procedural History**

25          Plaintiff initiated this action by filing a complaint.  (ECF No. 1.)  Upon screening, the

26   undersigned determined the complaint contained a potentially cognizable deliberate

27   indifference claim against defendants.  (ECF No. 11.)  Plaintiff elected to proceed on this

28   claim and voluntarily dismissed all other claims.  (ECF No. 15.)

                                              1

Defendants filed an answer on November 29, 2021.  (ECF No. 27.)  After a period of discovery, defendants filed the present motion for summary judgment.  (ECF No. 32.)  Plaintiff has filed a response, and defendants submitted a reply in support of their motion for summary judgment on December 20, 2022.  (ECF Nos. 37 and 38.)

## II.        Allegations in the Complaint

Plaintiff's complaint alleges that on August 20, 2018, he went "man down" in a holding cell at High Desert State Prison's (HDSP) medical unit due to severe lower back pain.  (ECF No. 1 at 3.)  Plaintiff alleges that defendant correctional officer Shrum then told other staff members to leave him on the floor and that he remained on the floor for an hour.  (Id.)  According to plaintiff, staff laughed at him, joked about his medical emergency, and tried to make him stand, despite knowing that he could not.  (Id. at 5.)  He was then placed and left on a backboard and gurney for another hour before being transported to the Triage and Treatment Area to receive pain medication.  (Id.)

The complaint includes copies of grievances plaintiff filed regarding the incident and authorities' responses.  According to these documents, in addition to the pain he experienced, plaintiff felt suicidal over the way staff responded to his medical emergency.  (ECF No. 1 at 11, 19.)

Plaintiff named five correctional officers as defendants: J. Shrum, J. Stone, S. Stiles, B. Schaake, and C. Miles.  He alleges that defendants Stone, Stiles, Schaake, and Miles did not try to stop defendant Shrum from interfering with his medical care.  (Id.)  He also named three nurses as defendants: G. Gonzales, J. Bassett, and B. Sharpes.  Plaintiff also identified as a defendant an unknown correctional officer who allegedly joked about stacking plaintiff and another inmate experiencing a medical emergency on top of one another, but the court dismissed this defendant because he could not be served or directed to answer.  (Id.; ECF No. 11 at 7.)

////

////

////

////

2

**MOTION FOR SUMMARY JUDGMENT**

**I.      The Parties' Briefing**

**A.  Defendants' Motion**

Defendants assert that they are entitled to summary judgment because they believe no reasonable jury could find that they deliberately ignored plaintiff's medical needs.  Along with a brief in support of the motion, they filed declarations from each defendant.  (See ECF No. 32.)  They also lodged a DVD of surveillance video footage taken in the medical unit during plaintiff's medical emergency ("Attachment 1") and a transcript of plaintiff's deposition ("Attachment 2").  (See ECF No. 33.)  The surveillance video lacks audio.  (ECF No. 32 at 7 n.1.)

Defendants deny plaintiff's allegations that defendant Shrum told staff to leave plaintiff on the floor and that staff members laughed at plaintiff.  (ECF No. 32 at 10.)  They argue that they responded appropriately to plaintiff's medical emergency and attribute the delay in transporting plaintiff to the Triage and Treatment Area to another inmate's intervening medical emergency.  (Id. at 10, 13.)  They also assert qualified immunity.  (Id. at 12.)

**B.  Plaintiff's Opposition**

In response to the motion for summary judgment, plaintiff filed handwritten responses to defendants' statement of undisputed material facts.  (ECF No. 37.)  Taken together, these responses dispute defendants' characterization of the incident and his legal claims.  He writes, "The allegation is there was no action [and] the [one] hour wait [on the gurney] is the allegation."  (Id. at 2.)  He states that, during the delay in transport, he "was suffering for no reason!"  (Id.)  Although he agrees that he eventually received treatment and felt better, he maintains that it followed "being treated like an animal left on the ground floor [and] then left on gurney [and] not being treated in a timely manner."  (Id.)  According to plaintiff, the Eighth Amendment violation did not arise solely out of a delay in transport and treatment, but also from defendants' failure to remove him from the floor in a timely manner or to take steps to ease his "suffering" while he awaited transport.

### C.  Defendants' Reply

Defendants' reply in support of the motion for summary judgment largely reiterates the arguments in their motion for summary judgment.  (ECF No. 38.)  They again justify the delay as reasonable because another inmate experienced a medical emergency at the same time, necessitating medical staff's attention.  (Id. at 2.)  They observe that plaintiff was administered pain medication at the Triage and Treatment Area, after which he reported feeling better.  (Id.)

## II.    Summary Judgment Standards

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Under summary judgment practice, "[t]he moving party bears the burden of proving the absence of a genuine issue of material fact."  In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove there is an absence of evidence to support the non-moving party's case."  Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).  Indeed, summary judgment should be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.  In such a circumstance, summary judgment should "be granted so long as whatever is

4

before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id.

If the moving party meets its initial responsibility, the burden shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(c).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 477 U.S. at 248.

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Cent. Costa Cnty. Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (per curiam) (citation omitted).  It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., 475 U.S. at 586 (citations omitted).  "Where the record is taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Id. at 587 (quoting First Nat'l Bank of Ariz. v. Cities Servs. Co., 391 U.S. 253, 289 (1986)).

On a motion for summary judgment, it is inappropriate for the court to weigh evidence or resolve competing inferences.  "In ruling on a motion for summary judgment, the court must leave '[c]redibility determinations, the weighing of the evidence, and the drawing of

5

1   legitimate inferences from the facts' to the jury." Foster v. Metropolitan Life Ins. Co., 243 F.

2   App'x 208, 210 (9th Cir. 2007) (quoting Anderson, 477 U.S. at 255).

3       **III.   Material Facts**

4       Defendants filed a Statement of Undisputed Facts ("DSUF") as required by Local Rule

5   260(a) along with their motion for summary judgment.  (ECF No. 32-2.)  Plaintiff's filing in

6   opposition to defendant's motion for summary judgment fails to comply with Rule 260(b).

7   (See ECF No. 37.)  Rule 260(b) requires that a party opposing a motion for summary judgment

8   "shall reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts

9   that are undisputed and deny those that are disputed, including with each denial a citation to the

10  particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or

11  other document relied upon in support of that denial."  Plaintiff filed a copy of the DSUF with

12  his handwritten responses but did not include the requisite citations to the record.  In light of

13  plaintiff's pro se status, the court has reviewed plaintiff's filings in an effort to discern whether

14  he denies any material fact in defendant's statement of undisputed facts.

15      The court is mindful of the Ninth Circuit's instruction that district courts are to

16  "construe liberally motion papers and pleadings filed by pro se inmates and should avoid

17  applying summary judgment rules strictly."  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir.

18  2010).  Accordingly, the court considers the record before it in its entirety despite plaintiff's

19  failure to be in strict compliance with the applicable rules.  However, only those assertions in

20  the opposition that have evidentiary support in the record will be considered.

21          **A.  Undisputed Facts**

22      On August 20, 2018, plaintiff went to the HDSP medical facility complaining of back

23  pain.  (DSUF (ECF No. 32-2) at ¶ 1.)

24      Plaintiff reports having a chronic history of back pain for the last thirty years, which

25  began after a weightlifting accident.  (DSUF (ECF No. 32-2) at ¶ 2.)

26      After entering the holding cell to await his appointment, plaintiff went "man down" by

27  "slowly . . . plac[ing] himself on the floor of the holding cell."  (DSUF (ECF No. 32-2) at ¶ 3;

28  ECF No. 33, Attach. 2, Pl.'s Depo. Tr., 54:8-11.)

1    Medical staff responded, checked on plaintiff, and took plaintiff's vitals.  (DSUF (ECF

2    No. 32-2) at ¶ 4.)

3    Correctional and medical staff secured plaintiff to a backboard and placed him on a

4    gurney to await transport to the Triage and Treatment Area.  (DSUF (ECF No. 32-2) at ¶ 5.)

5    It is normal procedure for an inmate to be transported to the Triage and Treatment Area if

6    there is not a doctor available at the clinic.  (DSUF (ECF No. 32-2) at ¶ 6.)  In his opposition,

7    plaintiff agreed that this was standard policy, but claimed that the average wait time for transport

8    was fifteen minutes.  (ECF No. 37 at ¶ 6.)  Defendants do not dispute plaintiff's assertion that the

9    average wait time for transport is fifteen minutes (see generally ECF No. 38), but they blame the

10   delay in plaintiff's case on an intervening medical emergency that required medical staff's

11   response.  (Id. at 2.)  Therefore, it is undisputed that it is normal procedure for an inmate to be

12   transported to the Triage and Treatment Area if a doctor is not available at the clinic, and that the

13   average wait time for transport is fifteen minutes.

14   While plaintiff waited on the gurney, an emergency code for another inmate's medical

15   emergency came in over the radio, and staff had to respond to that code.  (DSUF (ECF No. 32-2)

16   at ¶ 7.)

17   After approximately one hour on the gurney without further incident, the RN Rover

18   arrived to transport plaintiff to the Triage and Treatment Area, where plaintiff was seen and

19   treated with pain medication.  (DSUF (ECF No. 32-2) at ¶ 9.)

20   After receiving treatment at the Triage and Treatment Area, plaintiff reported feeling "a

21   lot better."  (DSUF (ECF No. 32-2) at ¶ 10.)

22   Defendants also note that, although plaintiff alleges remaining on the holding cell floor for

23   an hour, he spent approximately half an hour on the floor.  (ECF No. 32 at 11.)  The surveillance

24   footage confirms defendants' timeline, showing that plaintiff went man down at 12:48 p.m. and

25   that staff began preparing to place him on the back board at 1:18 p.m.  (ECF No. 33, Attch. 1, at

26   12:48:31, 1:18:38.).

27   Additionally, plaintiff claims to have a documented history of lower back pain and to have

28   received treatment from the Reno Sport and Spine Institute during his incarceration at HDSP.

1  (ECF No. 1 at 3, 16; ECF No. 33, Pl.'s Depo. Tr., 40:4-17.)  Defendants do not dispute this

2  alleged history and course of treatment or provide countervailing evidence.

3  **B.  Disputed Facts**

4  Defendants included the following statement in the DSUF: "There is no allegation of

5  improper action on the part of any Defendants during Plaintiff's one-hour wait on the gurney."

6  (DSUF (ECF No. 32-2) at ¶ 8.)  Plaintiff responded, "The allegation is there was no action [and]

7  the [one] hour wait [on the gurney] is the allegation."  (ECF No. 37 at ¶ 8.)  He claims that "all

8  that time [he] was suffering for no reason!"  (Id. at ¶ 9.)  In the complaint, plaintiff alleges that he

9  "was left in pain deliberately" by defendants Shrum, Bassett, Gonzales, and Sharpes.  (ECF No. 1

10  at 5.)  Plaintiff therefore alleges, at least in part, that defendants' delay in transporting him and

11  their failure to address his pain during this period constituted improper action.

12  Defendants also refute plaintiff's allegation that staff laughed at him and joked about his

13  medical emergency.  (ECF No. 32 at 10.)

14  **IV.  Discussion**

15  **A.  Legal Standards – Eighth Amendment**

16  The Eighth Amendment prohibits "cruel and unusual punishments."  Farmer v. Brennan,

17  511 U.S. 825, 832 (1994).  Where a prisoner's Eighth Amendment claims arise in the context of

18  medical care, the prisoner must allege and prove "acts or omissions sufficiently harmful to

19  evidence deliberate indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 106

20  (1976).  An Eighth Amendment medical claim has two elements: "the seriousness of the

21  prisoner's medical need and the nature of the defendant's response to that need."  McGuckin v.

22  Smith, 974 F.2d 1050, 1059 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v.

23  Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

24  A serious medical need exists if the failure to treat the condition could result in further

25  significant injury or the unnecessary and wanton infliction of pain.  Jett v. Penner, 439 F.3d 1091,

26  1096 (9th Cir. 2006).  To act with deliberate indifference, a prison official "must both be aware of

27  facts from which the inference could be drawn that a substantial risk of serious harm exists, and

28  he must also draw the inference."  Farmer, 511 U.S. at 837.  Thus, a defendant is liable if he

1  knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to

2  take reasonable measures to abate it."  Id. at 847.  "It is enough that the official acted or failed to

3  act despite his knowledge of a substantial risk of harm."  Id. at 842.

4       "Indifference 'may appear when prison officials deny, delay or intentionally interfere with

5  medical treatment, or it may be shown by the way in which prison physicians provide medical

6  care.'"  Jett, 439 F.3d at 1096 (quoting Estelle, 429 U.S. at 1059).  To establish a claim of

7  deliberate indifference arising from a delay in providing care, a plaintiff must show that the delay

8  was harmful.  See Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); McGuckin, 974 F.2d at

9  1059; Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990); Shapley v. Nevada Bd. of

10  State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).  In this regard, "[a] prisoner need not

11  show his harm was substantial; however, such would provide additional support for the inmate's

12  claim that the defendant was deliberately indifferent to his needs."  Jett, 439 F.3d at 1096; see

13  also McGuckin, 974 F.2d at 1060.

14       **B.  Analysis**

15       Plaintiff's accusations against defendants are two-fold.  First, he claims that correctional

16  staff defendants failed to properly respond to his medical situation.  In particular, he accuses

17  defendant Shrum of interfering with treatment by encouraging staff to leave him on the holding

18  cell floor and otherwise minimizing his medical needs.  (ECF No. 1 at 3; ECF No. 33, Pl.'s

19  Depo. Tr., 54:18–57:6.)  He accuses defendants Miles, Stiles, Stone, and Schaake of not "do[ing]

20  anything about C.O. Shrum's action toward plaintiff."  (ECF No. 1 at 5.)  He also claims that

21  defendants Stone and Miles failed to "transport [him] to the [Triage and Treatment Area] in a

22  timely manner," and to "treat [plaintiff] like a human being" or with dignity.  (ECF No. 33, Pl.'s

23  Depo. Tr., 76:16-21, 77:13-22, 78:4-8.)

24       Second, plaintiff accuses medical staff defendants of failing to provide timely and

25  adequate medical care prior to transport, including by leaving him on the holding cell floor for

26  thirty minutes, leaving him unattended on the gurney for an hour, and failing to try to mitigate his

27  pain while he waited.  (ECF No. 1 at 3; see generally ECF No. 37.)

28  ////

1    Plaintiff accuses all defendants of laughing at him and making fun of his situation.  (ECF

2    No. 1 at 3, 5.)  He alleges that he "was left in pain deliberately" by Shrum, Gonzales, Bassett, and

3    Sharpes.  (Id. at 5.)

4                    **1.  Serious medical need**

5    The undisputed facts show that plaintiff suffered from a serious medical need when he

6    went man down on August 20, 2018.  The presence of a condition that "a reasonable doctor or

7    patient would find important and worthy of comment or treatment," "significantly affects an

8    individual's daily activities," or results in "chronic and substantial pain" is indicative of "a

9    'serious' need for medical treatment." McGuckin, 974 F.2d at 1059–60.

10    Here, plaintiff claims to have suffered back pain for three decades and that it interferes

11    with his daily activities.  (DSUF (ECF No. 32-2) at ¶ 2; ECF No. 33, Pl.'s Depo. Tr., 29:20–30:3,

12    36:5-9.)  Medical staff at HDSP allegedly intermittently prescribed plaintiff medication for this

13    condition, though he was not receiving prescription pain medication as of August 20, 2018.  (ECF

14    No. 33, Pl.'s Depo. Tr., 26:14-21, 27:4-7.)  He also claims to have received treatment at the Reno

15    Sport and Spine Institute while incarcerated at HDSP, where he received epidurals, an MRI, and a

16    recommendation for surgery.  (ECF No. 1 at 16; ECF No. 33, Pl.'s Depo. Tr., 40:4-17.)  His

17    condition was such that he wore a vest designating him as "mobility impaired" and used a walker,

18    including when he arrived at the medical unit on August 20.  (ECF No. 33, Pl.'s Depo. Tr., 27:8-

19    23; id., Attch. 1, at 12:22:50.)  Cf. Hawthorne v. Bennington, No. 3:16-cv-00235 RCJ CLB, 2021

20    WL 3506524, at *4 (D. Nev. May 14, 2021) (finding that plaintiff experienced a serious medical

21    need when he suffered a back spasm that caused him severe pain and rendered him immobile);

22    Mason v. Ryan, No. CV 17-08098 PCT DGC (MHB), 2019 WL 1382468, at *19 (D. Ariz. Mar.

23    27, 2019) (finding that plaintiff experienced a serious medical need, where he suffered severe

24    neck pain that affected his daily activities and for which he received "x-rays, MRIs, medications,

25    physical therapy, injections, specialist referrals, and surgery.").

26    Defendants argue that plaintiff "cannot prove that his medical needs were sufficiently

27    serious such that a one or two-hour delay in seeing a provider and getting pain medication

28    amounted to an Eighth Amendment violation," but they do not dispute plaintiff's description of

10

1   his back condition, its effect on his daily activities, or his treatment history.  (See ECF No. 32 at

2   11.)  Given that plaintiff is the non-moving party and defendants did not provide evidence

3   contradicting his representations about his medical history, the court "must take as true

4   [plaintiff's] sworn statements regarding his pain and symptoms."  Mason, 2019 WL 1382468, at

5   *21; see Scott v. Harris, 550 U.S. 372, 380 (2007).  The undisputed facts therefore establish that

6   plaintiff had a serious medical need.

7                    **2.  Deliberate Indifference**

8          Deliberate indifference requires a showing that prison officials committed "(a) a

9   purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm

10  caused by the indifference."  Jett, 439 F.3d at 1906.  "The requirement of deliberate indifference

11  is less stringent in cases involving a prisoner's medical needs than in other cases involving harm

12  to incarcerated individuals because '[t]he State's responsibility to provide inmates with medical

13  care ordinarily does not conflict with competing administrative concerns.'"  McGuckin, 974 F.2d

14  at 1060 (quoting Hudson v. McMillian, 503 U.S. 1, 6 (1992)) (alteration in original).

15                  **a.  Whether defendants purposely ignored plaintiff's medical needs**

16         There are genuine disputes of material fact over whether some defendants subjectively

17  knew about plaintiff's medical needs, but nonetheless deliberately ignored them by delaying

18  treatment.  Regarding the medical staff defendants, the parties agree that plaintiff spent an

19  hour on the gurney because another inmate's intervening medical emergency required medical

20  staff's immediate attention.  (DSUF (ECF No. 32-2) at ¶ 7.)  It is not clear at what time the

21  other emergency occurred, except that it was sometime after plaintiff was placed on the

22  gurney.  (Id.)  Defendants believe this other medical emergency justified delaying plaintiff's

23  transport.  (ECF No. 32 at 10.)  However, they do not explain why medical staff decided to

24  leave plaintiff on the floor for thirty minutes, during which time they appeared to attend to

25  other, mobile inmates instead of plaintiff.  (ECF No. 33, Attch. 1, at 12:55:51–12:56:04,

26  1:03:45–1:05:45.)  It is possible that, had they removed him to the gurney earlier, plaintiff

27  could have been transported prior to the intervening medical emergency and received

28  treatment sooner.

                                    11

Additionally, the medical staff defendants do not discuss whether they took steps to mitigate plaintiff's pain while he awaited transport, including by administering nonprescription medication like ibuprofen, and do not cite any policy or medical reason that would have prevented them from doing so.  Defendants state that it was policy to transport patients to the Triage and Treatment Center when a doctor was not present in the clinic.  (DSUF (ECF No. 32-2) at ¶ 6.)  Yet, Nurse Sharpes states that she "provide[d] care" to other patients on August 20, even though no doctor was present in the clinic.  (ECF No. 32-9 at ¶ 4.)  As such, it is not clear that the transport policy prevented medical staff defendants from providing plaintiff with some type of pain treatment.

On its own, a failure to provide plaintiff medication for back pain while he awaited transport likely does not constitute deliberate indifference.  See Hawthorne, 2021 WL 3506524, at *5 (finding that plaintiff could not prove deliberate indifference, where medical staff defendants failed to "contact the on-call physician for permission to administer some level of pain medication or muscle relaxer" for plaintiff's back pain, but plaintiff received treatment two days later).  However, combined with the unjustified thirty-minute delay in removing plaintiff from the floor and additional evidence discussed below, a jury could find this information probative to whether the medical staff defendants deliberately ignored his debilitating pain.

Each defendant's alleged individual conduct is analyzed below.  The undersigned has determined that summary judgment is appropriate as to Sharpes, Shrum, Stone, Stiles, Schaake, and Miles, but not Gonzales and Bassett.

### i.   Defendant Gonzales

Nurse Gonzales states that she was not present when plaintiff went man down, but she helped secure him to the back board.  (ECF No. 32-4 at ¶ 4.)  She denies laughing at plaintiff or making inappropriate comments about his medical emergency.  (Id. at ¶ 5.)

Plaintiff testified during his deposition that Gonzales has a history of refusing to provide him with pain medication for his chronic pain, prior to August 20, 2018.  (ECF No. 33, Pl.'s Depo. Tr., 86:8-24.)  Defendants do not address this allegation.

12

1    Whether there is a genuine question of material fact concerning Gonzales's conduct

2    presents a close question.  On the one hand, the video footage does not show that a female

3    nurse was present when plaintiff went man down, thereby confirming that Gonzales was not

4    present, and Officer Shrum states that he notified Nurse Bassett immediately after it

5    happened.  (ECF No. 33, Attch. 1, at 12:48:31; ECF No. 32-11 at ¶ 3.)  It is therefore unclear

6    when Gonzales learned about plaintiff's medical emergency and whether she played a role in

7    the decision to leave him on the holding cell floor for thirty minutes.

8    On the other hand, plaintiff has accused Gonzales of repeatedly denying him pain

9    medication for his chronic pain, which a jury could find probative to whether she knew about

10   plaintiff's serious medical needs and deliberately failed to treat them in an appropriate manner

11   on August 20.  McGuckin, 974 F.2d at 1060–61 ("[A] finding that the defendant repeatedly

12   failed to treat an inmate properly . . . strongly suggests that the defendant's actions were

13   motivated by 'deliberate indifference' to the prisoner's medical needs.").  She has similarly not

14   explained why she did not take steps to address plaintiff's pain while he awaited transport.

15   Additionally, Gonzales is not identifiable in the video because defendants did not

16   provide the court with a means to visually identify each defendant and staff's name badges are

17   not legible.  Therefore, it is uncertain whether Gonzales engaged in behavior that could

18   potentially substantiate plaintiff's allegations of deliberate indifference, when considered

19   alongside evidence that Gonzales repeatedly denied plaintiff pain medication.  For example, a

20   jury could find it probative if Gonzales is the nurse who appears to laugh or scoff at plaintiff

21   while he lay on the holding cell floor at 1:00 p.m., or the nurse who appears to look at plaintiff

22   and then laugh to another nurse while he lay on the gurney at 2:02 p.m.  (ECF No. 33, Attch. 1,

23   at 1:00:45–1:00:47, 2:02:02–2:02:18.)  See Mason, 2019 WL 1382468, at *21 (finding that

24   defendant's conduct was dismissive and therefore probative of deliberate indifference, where

25   he smiled at plaintiff and told plaintiff he would deny plaintiff pain medication); Franklin v.

26   McCaughtry, No. 02–C–618–C, 2004 WL 221982, at *11 (W.D. Wis. Feb. 3, 2004)

27   ("Although a prison official's statements could be evidence of deliberate indifference, it is his

28   ////

1   conduct and not his speech that is most probative in showing that a defendant acted with

2   reckless disregard for the inmate's health.").

3      Taken together, this information creates a genuine issue of material fact over whether

4   Gonzales subjectively knew about plaintiff's serious medical need and deliberately ignored it.

5   Accordingly, the undersigned recommends that the motion for summary judgment be denied as to

6   defendant Gonzales.

7   **ii. Defendant Bassett**

8      Nurse Basset is identifiable in the video footage because he can be seen retrieving the

9   back board, consistent with his and Shrum's accounts. (ECF No. 32-6 at ¶ 3; ECF No. 32-11

10  at ¶ 3). Plaintiff also identified Bassett as male during his deposition, and Bassett is the only

11  male nurse seen interacting with plaintiff prior to his transport. (See generally ECF No. 33,

12  Pl.'s Depo. Tr., 81:18–84:7.)

13     Basset states that plaintiff visited the medical unit on August 20 because he had an

14  appointment with Bassett, though Bassett does not identify the reason for the visit. (ECF No.

15  32-6 at ¶ 1.) He states that he "was informed" that plaintiff "was lying on the ground in the

16  holding cell." (Id. at ¶ 3.) He went to the holding cell and spoke with plaintiff, who "did not

17  appear to be in acute pain or distress." (Id.) It appears that Bassett did not speak to plaintiff

18  until 1:15 p.m.,[1] nearly half an hour after plaintiff went man down, though defendant Shrum

19  allegedly notified him "immediately." (ECF No. 33, Attach. 1, at 1:15:57; ECF No. 32-11 at ¶

20  3.)

21     Bassett asked correctional staff to help place plaintiff on the back board, and claims that

22  he "would periodically check on [plaintiff] while [plaintiff] was in the medical clinic." (ECF No.

23  32-6 at ¶ 3.) However, the video footage shows that, once plaintiff was on the gurney, Bassett did

24  not check on him until an hour later, when staff arrived to transport him. (ECF No. 33, Attach. 1,

25  at 2:24:15.) Regarding the reason for the transport delay, Bassett states: "I am informed and

26  believe the RN Rover had to respond to this other inmate before [plaintiff] could be transported to

27

28  [1] At 12:59 p.m., Bassett walked up to the holding cell and began to speak, but he appears to have been conversing with another inmate who was standing against the bars. (ECF No. 33, Attach. 1, at 12:59:00–12:59:30.)

14

the Triage and Treatment Area." (ECF No. 32-6 at ¶ 5.)  This language suggests that he was not personally involved in responding to the other inmate's medical emergency.  (Cf. ECF No. 32 at 11.)

As with Nurse Gonzales, there is a close question over whether a genuine dispute exists as to Nurse Bassett's conduct.  Defendants' declarations indicate that Bassett led the medical staff's response to plaintiff's emergency.  Shrum notified Bassett that plaintiff had gone man down, and Bassett directed staff to place plaintiff on the back board and gurney.  (See ECF No. 32-6 at ¶ 3; ECF No. 32-8 at ¶ 3; ECF No. 32-11 at ¶ 3.)  These facts imply that he made the decision to leave plaintiff on the floor for thirty minutes.

Bassett did not take steps to address plaintiff's pain while he awaited transport, and did not check on plaintiff for an hour after he was placed on the gurney.  Moreover, if the reason for plaintiff's scheduled appointment with Bassett was his chronic back pain, it could be probative to whether Bassett subjectively knew about plaintiff's serious medical needs and deliberately failed to treat them in a timely manner.  Cf. Terrance v. Northville Reg. Psychiatric Hosp., 286 F.3d 834, 844 (6th Cir. 2002) (finding a "factual question" over whether defendant doctor acted with deliberate indifference, where he knew of decedent's medical conditions making him more susceptible to heat stroke and delayed treating decedent for an hour after he began to exhibit heat stroke symptoms.)  Accordingly, the undersigned recommends that defendant's motion for summary judgment be denied as to defendant Bassett.

### iii.  Defendant Sharpes

Nurse Sharpes was present when staff placed plaintiff on the back board and gurney. (ECF No. 32-9 at ¶ 3.)  She recalls that "[e]verything stopped at the clinic so that they could address [plaintiff's] concern."  (Id.)  She also claims to have checked on plaintiff while he awaited transport.  (Id.)

Sharpes's recollection that "[e]verything stopped at the clinic so that they could address [plaintiff's] concern" is inconsistent with the fact that plaintiff remained on the floor for thirty minutes, while staff appeared to attend to other inmates who had not gone man down.  (ECF No. 33, Attach. 1, at 12:55:51–12:56:04, 1:03:45–1:05:45.)  It suggests that Sharpes was not aware of

1   how long plaintiff spent on the floor and did not participate in the decision to leave him there for

2   half an hour.  Plaintiff has not accused her of refusing to provide him with pain medication in the

3   past, as he has with Nurse Gonzales, and she does not appear to have taken the same role in

4   treating plaintiff as Bassett.

5      Therefore, even assuming Sharpes did laugh at plaintiff as he claims, the most plaintiff

6   could prove is that she failed to treat plaintiff's pain while he awaited transport.  On these facts,

7   plaintiff could perhaps prove negligence, but not deliberate indifference.  <u>McGuckin</u>, 974 F.3d at

8   1059 ("'[N]egligence in diagnosing or treating a medical condition, without more, does not

9   violate a prisoner's Eighth Amendment rights.'" (quoting <u>Hutchinson v. United States</u>, 838 F.2d

10   390, 394 (9th Cir.1988)); <u>Hawthorne</u>, 2021 WL 3506524, at *5 (plaintiff could not prove

11   defendant nurses acted with deliberate indifference when they failed to obtain permission to

12   administer pain medication for plaintiff's back pain).  The undersigned recommends that the

13   motion for summary judgment be granted as to defendant Sharpes.

14             **iv. Defendant Shrum**

15      Defendant Shrum denies laughing at plaintiff or instructing staff to leave him on the floor.

16   (ECF No. 32-11 at ¶ 5.)  The other defendants deny witnessing him laugh or make such

17   comments.  (ECF No. 32-4 at ¶ 5; ECF No. 32-5 at ¶ 4; ECF No. 32-6 at ¶ 6; ECF No. 32-7 at ¶

18   5; ECF No. 32-8 at ¶ 4; ECF No. 32-9 at ¶ 5; ECF No. 32-10 at ¶ 4.)  Shrum states that he

19   "immediately told RN Bassett" that plaintiff had gone man down.  (ECF No. 32-11 at ¶ 3.)  He

20   also helped place plaintiff on the back board.  (<u>Id.</u>)  Defendants argue that, even if Shrum

21   encouraged medical staff to leave plaintiff on the floor, there is no evidence that he interfered

22   with plaintiff's medical care, where correctional officers cannot dictate an inmate's medical

23   treatment, medical staff eventually attended to plaintiff, and Shrum assisted them.  (ECF No. 32

24   at 12–13.)

25      Plaintiff does not accuse Shrum of failing to summon medical staff in a timely manner or

26   dispute that Shrum helped medical staff place him on the back board and gurney.  (ECF No. 1 at

27   3, 5; <u>see generally</u> ECF No. 33, Pl.'s Depo. Tr.; ECF No. 37.)  He alleges that "C.O. Shrum told

28   the medical staff / nurses to leave me on the floor and all of them did for over an hour," but this

1   statement does not contradict defendants' claim that when medical staff did eventually attend to

2   plaintiff, Shrum assisted them.  (ECF No. 1 at 3.)  Additionally, plaintiff has not accused Shrum

3   of physically obstructing medical staff from tending to him.  (See generally ECF No. 1; ECF No.

4   33, Pl.'s Depo. Tr., 51:2–52:9, 54:19–59:5.)

5        Plaintiff cannot prove that Shrum acted with deliberate indifference.  California

6   regulations provide that "[o]nly facility-employed health care staff, contractors paid to perform

7   health services for the facility, or persons employed as health care consultants shall be permitted,

8   within the scope of their licensure, to diagnose illness or prescribe medication and health care

9   treatment for patients." Cal. Code Regs. tit. 15, § 3999.132(a).  "No other personnel or inmates

10  may do so."  Id.  Under this rule, medical staff could not treat Shrum's alleged statements to leave

11  plaintiff on the floor as an order; they had to make their own assessments about plaintiff's

12  condition and the appropriate response.  Id., § 3999.146; Cal. Code Regs. tit. 16, § 1443.5.  Any

13  decision to leave plaintiff on the floor for thirty minutes was therefore made by medical staff, not

14  Shrum.  The undisputed facts also show that, even if Shrum did not believe plaintiff was

15  experiencing a serious medical need, Shrum took appropriate action by timely notifying Bassett

16  and helping medical staff attend to plaintiff.  Franklin, 2004 WL 221982, at *11 ("[I]t is [a prison

17  official's] conduct and not his speech that is most probative in showing that a defendant acted

18  with reckless disregard for the inmate's health.").

19       There remains a question as to what information Shrum relayed to Bassett when he told

20  Bassett that plaintiff had gone man down, but it does not preclude summary judgment for Shrum.

21  What Shrum told Bassett would have informed medical staff's conclusions about the seriousness

22  of the situation and their response time.  Plaintiff claims he heard Shrum make comments to other

23  staff intimating that plaintiff "was faking" his symptoms, and it remains possible that plaintiff

24  overheard Shrum make them to Bassett.  (ECF No. 33, Pl. Depo. Tr., 52:7-8.)  However, under

25  California law, Bassett could not rely on Shrum's assessment that plaintiff was faking his pain,

26  and plaintiff has not accused Shrum of deliberately misrepresenting or mischaracterizing

27  plaintiff's symptoms to Bassett.  Bassett had an opportunity to investigate plaintiff's condition for

28  himself at 12:59 p.m., when he visited the holding cell and could presumably see plaintiff on the

1    floor; it was therefore Bassett's decision to not take immediate action at 12:59 p.m. that delayed

2    plaintiff's removal from the floor until 1:18 p.m., rather than any statements Shrum made.  (ECF

3    No. 33, Attch. 1, at 12:59:00–12:59:30.)

4         Shrum's alleged conduct is not the type of conduct that courts have recognized as creating

5    a genuine dispute over whether a correctional officer acted with deliberate indifference to a

6    prisoner's medical needs.  In those cases, prisoners have claimed that a defendant correctional

7    officer failed to summon medical staff or failed to do so in a timely manner.  See, e.g., Harbridge

8    v. Hickman, No. 1:10-cv-00473 AWI JLT (PC), 2016 WL 561517, at *15 (E.D. Cal. Feb. 12,

9    2016); Brush v. Woodford, No. 1:07–cv–01009 LJO SKO PC, 2011 WL 573817, at *8 (E.D. Cal.

10   Feb. 15, 2011).  Here, by contrast, the parties do not dispute that Shrum timely summoned

11   medical staff, and there is no evidence that Shrum's statements delayed medical staff's response

12   time.  Accordingly, the undersigned recommends that the motion for summary judgment be

13   granted as to defendant Shrum.

14                    **v. Defendants Stone and Stiles**

15        Stone was present when plaintiff went man down and allegedly asked plaintiff "what was

16   wrong," to which plaintiff responded that his medication had expired.  (ECF No. 32-8 at ¶ 3.)

17   According to Stone, "We informed the nursing staff that the [plaintiff] was in the holding cell

18   laying down."  (Id.)  He helped place plaintiff on the back board and gurney, at the direction of

19   medical staff.  (Id.)

20        Stiles was also present when plaintiff went man down, but does not appear to have helped

21   notify medical staff.  (ECF No. 32-7 at ¶ 3.)  Stiles also helped place plaintiff on the back board

22   and gurney.  (Id.)

23        Plaintiff accuses Stone of failing to transport him to the Triage and Treatment Area in a

24   timely manner.  He also accuses Stone of treating him disrespectfully and "allow[ing] Shrum to

25   orchestrate the situation, this illegal situation."  (ECF No. 33, Pl.'s Depo. Tr., 77:19-20.)  Plaintiff

26   claims Stiles violated his rights when Stiles and the other correctional staff defendants "didn't do

27   anything about C.O. Shrum's action toward plaintiff."  (ECF No. 1 at 5.)

28   ////

                         18

With respect to Stone's alleged failure to timely transport plaintiff, correctional officers cannot render medical aid to inmates.  Cal. Code Regs. tit. 15, § 3999.132(a).  There is no evidence that Stone had the authority to transport plaintiff, that he willfully ignored orders to transport him, or that any policy required him to do so.  According to Gonzales and Bassett's declarations, the RN Rover transports inmates to the Triage and Treatment Area, and defendants' brief states that there was a delay in transporting plaintiff because medical staff needed to attend to another inmate's emergency.  (ECF No. 32-4 at ¶ 4; ECF No. 32-6 at ¶ 6; ECF No. 32 at 10, 11.)  It would therefore seem that medical staff are primarily responsible transporting patients to the Triage and Treatment Area, not correctional officers like Stone.  Moreover, because only medical staff can treat a patient, Stone and Stiles could not have removed plaintiff from the floor earlier, absent authorization from medical staff.

Plaintiff also cannot prove that Stone and Stiles acted with deliberate indifference by failing to intervene against Shrum.  For reasons discussed above, no reasonable jury could find that Shrum's alleged statements impeded plaintiff's access to timely and appropriate care.  It follows that Stone and Stiles cannot be held liable for failing to stop Shrum from making these alleged comments.  The undersigned therefore recommends that the motion for summary judgment be granted as to defendants Stone and Stiles.

**vi. Defendants Schaake and Miles**

According to plaintiff, defendant Schaake violated his rights when Schaake and other correctional staff defendants "didn't do anything about C.O. Shrum's action toward plaintiff." (ECF No. 1 at 5.)  Plaintiff testified during his deposition that his accusations against Stone also apply to defendant Miles.  (ECF No. 33, Pl.'s Depo. Tr., 78:4-8.)

On August 20, 2018, Schaake was assigned to the medical unit as an escort officer and "was focused on running the medical clinic lines." (ECF No. 32-10 at ¶ 3.)  Schaake "recall[s] an inmate in the holding cell laying on the ground that day." (Id.)  Schaake states that it would have been protocol for officers to assist medical staff in placing plaintiff on the back board and gurney. (Id.)  It is unclear from Schaake's declaration and the medical unit video footage whether

////

19

1  Schaake was present when plaintiff went man down or helped place plaintiff on the back board

2  and gurney.

3       Miles "was assigned to work as a clinic Officer" on August 20.  (ECF No. 32-5 at ¶ 3.)

4  He recalls "seeing an inmate in the medical clinic holding cell lying on the ground that day" but

5  was not involved with the inmate's custody or care.  (Id.)  He entered the medical unit "briefly,"

6  then left "shortly thereafter to continue with [his] other duties and assignments that day."  (Id.)

7  He did not speak to plaintiff.  (Id. at ¶ 4.)

8       For the same reasons discussed above, Miles's failure to transport plaintiff does not

9  amount to deliberate indifference.  Correctional officers do not appear to have the authority to

10  transport inmates without medical staff authorization, and he did not have authorization from

11  medical staff to remove plaintiff from the floor.

12       Additionally, Schaake and Miles cannot be held liable for failing to intervene against

13  Shrum because a reasonable jury could not find that Shrum interfered with plaintiff's medical

14  care.  The undersigned therefore recommends that the motion for summary judgment be granted

15  as to defendants Schaake and Miles.

16                    **b.   Plaintiff's alleged harm**

17       Finally, the parties dispute whether the delay harmed plaintiff.  Plaintiff claims that, as a

18  result of defendants' alleged deliberate indifference, he unnecessarily experienced debilitating

19  pain for two hours, suicidal thoughts, nightmares, trauma, and fearfulness of experiencing a

20  similar situation in the future, such that he avoids going to the medical unit for treatment of his

21  chronic pain and other ailments.  (ECF No. 1 at 11; ECF No. 33, Pl.'s Depo. Tr., 91:19–93:15;

22  ECF No. 37 at ¶ 9.)

23       Defendants argue that plaintiff cannot prove that the delay harmed him.  According to

24  defendants, plaintiff must not only show that he suffered harm a result of their delay, but also

25  that he suffered "further injury" due to the delay.  (ECF No. 32 at 10.)  They cite Hallett v.

26  Morgan, 296 F.3d 732 (9th Cir. 2002), for this proposition, but Hallett does not employ this

27  standard and the phrase "further injury" does not appear in the opinion.  Instead, Hallett applies

28  the long-established rule that a delay in care, "'standing alone, does not constitute an eighth

                                        20

amendment violation.'"  296 F.3d at 746 (quoting <u>Hunt v. Dental Dep't</u>, 865 F.2d 198, 200 (9th Cir. 1989)).  Defendants also fail to provide case law holding that mental anguish is not an actionable harm.  <u>Cf</u>. <u>Bustos v. United States</u>, No. 08–cv–00153 LTB MEH, 2010 WL 4256182, at *4 (D. Colo. Oct. 21, 2010) (finding that federal courts "are willing to make more inclusive the definition of 'physical injury' when the prisoner alleges that he failed to receive adequate medical treatment . . . and thereafter suffered mental or emotional harm," when assessing whether a plaintiff has satisfied the Prison Litigation Reform Act's physical injury requirement (emphasis omitted)).

In <u>McGuckin v. Smith</u>, 974 F.2d 1050 (9th Cir. 1992), the Ninth Circuit held that the "the unnecessary continuation of [the plaintiff's] condition and pain" due to a delay in treatment constituted a harm.  974 F.2d at 1062.  Other circuit courts have reached similar conclusions.  The Sixth Circuit has held that deliberately causing a prisoner to experience "pain needlessly when relief is readily available" is an actionable harm.  <u>Richmond v. Huq</u>, 885 F.3d 928, 939 (6th Cir. 2018) (quoting <u>Boretti v. Wiscomb</u>, 930 F.2d 1150, 1154–55 (6th Cir. 1991)) (finding summary judgment inappropriate as to a defendant nurse because there was a question of fact over whether the defendant intentionally scrubbed the plaintiff's wound in a manner that caused severe pain).  The Eleventh Circuit has recognized that "officials violate an inmate's Eighth Amendment rights by failing to provide, unreasonably delaying[,] or providing grossly inadequate medical care that causes an inmate to 'needlessly suffer' severe pain."  <u>Melton v. Abston</u>, 841 F.3d 1207, 1227 (11th Cir. 2016).  That the pain lasted for a short period of time does not preclude a finding of harm.  <u>See</u> <u>Darrah v. Krisher</u>, 865 F.3d 361, 368 (6th Cir. 2017) (finding that "[e]ven relatively short periods of delay or neglect have sufficed" to establish deliberate indifference).  In the Eleventh Circuit, "an unexplained delay of hours in treating a serious injury states a prima facie case of deliberate indifference." <u>Reid v. Streit</u>, 697 F. App'x 968, 973 (11th Cir. 2017) (quoting <u>Brown v. Hughes</u>, 894 F.2d 1533, 1538 (11th Cir. 1990)).

Here, plaintiff claims that he needlessly suffered severe back pain for two hours, and later experienced emotional distress from the incident.  Case law recognizes the unnecessary prolonging of a prisoner's pain as an actionable harm, especially where there is no justification

1   for the delay or when pain treatment is readily available.  Defendants have not explained why

2   medical staff delayed removing plaintiff from the holding cell floor for thirty minutes, or whether

3   they had the power to help manage plaintiff's pain while he awaited transport.  There is therefore

4   a genuine issue of material fact over whether the delay harmed plaintiff.

5                                    **QUALIFIED IMMUNITY**

6          Defendants also assert qualified immunity.  They reiterate their arguments that no

7   reasonable jury would find that defendants violated plaintiff's Eighth Amendment rights and

8   argue that, even if he could prevail, "a reasonable official would not have known that Defendants

9   violated the Constitution."  (ECF No. 32 at 15.)  Given the genuine dispute over whether

10  defendants Gonzales and Bassett were deliberately indifferent to plaintiff's serious medical needs,

11  the question of whether they are entitled to qualified immunity remains premature.

12  **I.     Legal Standard – Qualified Immunity**

13         Government officials enjoy qualified immunity from civil damages unless their conduct

14  violates clearly established statutory or constitutional rights.  Jeffers v. Gomez, 267 F.3d 895, 910

15  (9th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  When a court is

16  presented with a qualified immunity defense, the central questions for the court are: (1) whether

17  the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the

18  defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue

19  was "clearly established."  Saucier v. Katz, 533 U.S. 194, 201 (2001), receded from, Pearson v.

20  Callahan, 555 U.S. 223 (2009) (the two factors set out in Saucier need not be considered in

21  sequence).  "Qualified immunity gives government officials breathing room to make reasonable

22  but mistaken judgments about open legal questions."  Ashcroft v. al-Kidd, 563 U.S. 731, 743

23  (2011).  The existence of triable issues of fact as to whether prison officials were deliberately

24  indifferent does not necessarily preclude qualified immunity.  Estate of Ford v. Ramirez–Palmer,

25  301 F.3d 1043, 1053 (9th Cir. 2002).

26         "For the second step in the qualified immunity analysis—whether the constitutional right

27  was clearly established at the time of the conduct—the critical question is whether the contours of

28  the right were 'sufficiently clear' that every 'reasonable official would have understood that what

1  he is doing violates that right.'" Mattos v. Agarano, 661 F.3d 433, 442 (9th Cir. 2011) (quoting

2  al-Kidd, 563 U.S. at 741) (some internal marks omitted). "The plaintiff bears the burden to show

3  that the contours of the right were clearly established." Clairmont v. Sound Mental Health, 632

4  F.3d 1091, 1109 (9th Cir. 2011). "[W]hether the law was clearly established must be undertaken

5  in light of the specific context of the case, not as a broad general proposition." Estate of Ford,

6  301 F.3d at 1050 (citation and internal marks omitted).

7      In making this determination, courts consider the state of the law at the time of the alleged

8  violation and the information possessed by the official to determine whether a reasonable official

9  in a particular factual situation should have been on notice that his or her conduct was illegal.

10  Inouye v. Kemna, 504 F.3d 705, 712 (9th Cir. 2007); see also Hope v. Pelzer, 536 U.S. 730, 741

11  (2002) (the "salient question" to the qualified immunity analysis is whether the state of the law at

12  the time gave "fair warning" to the officials that their conduct was unconstitutional). "[W]here

13  there is no case directly on point, 'existing precedent must have placed the statutory or

14  constitutional question beyond debate.'" C.B. v. City of Sonora, 769 F.3d 1005, 1026 (9th Cir.

15  2014) (citing al-Kidd, 563 U.S. at 740). An official's subjective beliefs are irrelevant. Inouye,

16  504 F.3d at 712.

17      **II.     Analysis**

18      As set out above, the undersigned will recommend that summary judgment be granted

19  as to defendants Sharpes, Shrum, Stone, Stiles, Schaake, and Miles. Therefore, the

20  undersigned considers whether defendants Gonzales and Bassett are entitled to qualified

21  immunity.

22      Federal courts have long recognized that "deliberate indifference to serious medical

23  needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by

24  the Eighth Amendment." Estelle, 429 U.S. at 104 (quoting Gregg v. Georgia, 428 U.S. 153,

25  173 (1976)) (internal citation omitted). "This is true whether the indifference is manifested by

26  prison doctors in their response to the prisoner's needs or by prison guards in intentionally

27  denying or delaying access to medical care or intentionally interfering with the treatment once

28  prescribed." Id. at 104–05.

1    A prisoner must show that he experienced a serious medical need and that prison officials

2    responded with deliberate indifference.  Jett, 439 F.3d at 1096.  "The existence of an injury that a

3    reasonable doctor or patient would find important and worthy of comment or treatment . . . [or]

4    that significantly affects an individual's daily activities; or the existence of chronic and

5    substantial pain" indicates "a 'serious' need for medical treatment." McGuckin, 974 F.2d at

6    1059–60.  To show that officials acted with deliberate indifference, a prisoner must establish "(a)

7    a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm

8    caused by the indifference."  Jett, 439 F.3d at 1096.  The Ninth Circuit has previously recognized

9    "the unnecessary continuation of [a prisoner's] condition and pain" as an actionable harm.

10   McGuckin, 974 F.2d at 1062.

11   Under the first part of the qualified immunity analysis, the court considers whether the

12   facts alleged demonstrate that defendants' conduct violated plaintiff's Eighth Amendment rights.

13   In this case, there remain triable issues of fact over whether: (i) defendants Gonzales and Bassett

14   knew about plaintiff's serious medical need and deliberately ignored it, and (ii) the delay harmed

15   plaintiff.  These issues cannot be resolved on summary judgment.  Therefore, it is premature to

16   consider the question of qualified immunity as well.  See Wilkins v. City of Oakland, 350 F.3d

17   949, 956 (9th Cir. 2003) ("Where the officers' entitlement to qualified immunity depends on the

18   resolution of disputed issues of fact in their favor, and against the non-moving party, summary

19   judgment is not appropriate.").

20                                          **CONCLUSION**

21   For the reasons set forth above, the Clerk of the Court is ORDERED to randomly assign

22   this action to a district judge.

23   IT IS HEREBY RECOMMENDED that defendants' motion for summary judgment (ECF

24   No. 32) be:

25   1.  Denied as to defendants Gonzales and Bassett; and

26   2.  Granted as to defendants Sharpes, Shrum, Stone, Stiles, Schaake, and Miles.

27   These findings and recommendations will be submitted to the United States District Judge

28   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty days

after being served with these findings and recommendations, either party may file written

objections with the court.  The document should be captioned "Objections to Magistrate Judge's

Findings and Recommendations."  The parties are advised that failure to file objections within the

specified time may result in waiver of the right to appeal the district court's order.  <u>Martinez v.</u>

<u>Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated:  July 17, 2023

DB:15
DB/DB Prisoner Inbox/Civil Rights/S/cast2030.msj fr

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

25