1
2
3
4
5
6
7

8              UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ARCHIE CASTELLANO,                    No.  2:19-cv-02030 WBS DB P

12              Plaintiff,

13        v.                               ORDER AND FINDINGS AND
                                           RECOMMENDATIONS
14   J. SHRUM, et al.,

15              Defendants.

16

17        Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42

18   U.S.C. § 1983.  Plaintiff claims defendants failed to provide him with adequate medical care

19   when he experienced a medical emergency on August 20, 2018.  (ECF No. 1 at 3, 5.)

20   Presently before the court is defendants' fully briefed motion for summary judgment.  (ECF

21   No. 32.)  For the reasons set forth below, the undersigned will recommend that the motion for

22   summary judgment be granted.[1]

23   _____
     [1] On July 17, 2023, the undersigned issued findings and recommendations, recommending that
24   defendants' motion for summary judgment be denied as to defendants Bassett and Gonzales, and
     granted as to the remaining defendants. (ECF No. 39.)  Therein, the undersigned found triable
25   issues of fact over whether defendants Bassett and Gonzales acted with deliberate indifference.
     Defendants filed objections, arguing that plaintiff failed to advance sufficient evidence to create a
26   genuine dispute of material fact as to these defendants.  (ECF No. 40.)  Upon further review of
     the record, the undersigned agrees.  The July 17, 2023, findings and recommendations did not
27   adequately address Bassett and Gonzales's knowledge of plaintiff's medical need, and plaintiff's
     deposition testimony fails to establish a genuine dispute on this question.  Accordingly, the court
28   will vacate the July 17, 2023, findings and recommendations, and proceed in accordance with this
     order and findings and recommendations.

1

**BACKGROUND**

2

### I.        Relevant Procedural History

3       Plaintiff initiated this action by filing a complaint.  (ECF No. 1.)  Upon screening, the

4   undersigned determined the complaint contained a potentially cognizable deliberate

5   indifference claim against defendants.  (ECF No. 11.)  Plaintiff elected to proceed on this

6   claim and voluntarily dismissed all other claims.  (ECF No. 15.)

7       Defendants filed an answer on November 29, 2021.  (ECF No. 27.)  After a period of

8   discovery, defendants filed the present motion for summary judgment.  (ECF No. 32.)

9   Plaintiff has filed a response, and defendants submitted a reply in support of their motion for

10   summary judgment on December 20, 2022.  (ECF Nos. 37 and 38.)

11

### II.       Allegations in the Complaint

12       Plaintiff's complaint alleges that on August 20, 2018, he went "man down" in a

13   holding cell at High Desert State Prison's (HDSP) medical unit due to severe lower back pain.

14   (ECF No. 1 at 3.)  Plaintiff alleges that defendant correctional officer Shrum then told other

15   staff members to leave him on the floor and that he remained on the floor for an hour.  (Id.)

16   According to plaintiff, staff laughed at him, joked about his medical emergency, and tried to

17   make him stand, despite knowing that he could not.  (Id. at 5.)  He was then placed and left on

18   a backboard and gurney for another hour before being transported to the Triage and Treatment

19   Area to receive pain medication.  (Id.)

20       The complaint includes copies of grievances plaintiff filed regarding the incident and

21   authorities' responses.  According to these documents, in addition to the pain he experienced,

22   plaintiff felt suicidal over the way staff responded to his medical emergency.  (ECF No. 1 at

23   11, 19.)

24       Plaintiff named five correctional officers as defendants: J. Shrum, J. Stone, S. Stiles, B.

25   Schaake, and C. Miles.  He alleges that defendants Stone, Stiles, Schaake, and Miles did not try to

26   stop defendant Shrum from interfering with his medical care.  (Id.)  He also named three nurses as

27   defendants: G. Gonzales, J. Bassett, and B. Sharpes.  Plaintiff also identified as a defendant an

28   unknown correctional officer who allegedly joked about stacking plaintiff and another inmate

experiencing a medical emergency on top of one another, but the court dismissed this defendant because he could not be served or directed to answer.  (Id.; ECF No. 11 at 7.)

## MOTION FOR SUMMARY JUDGMENT

### I.    Summary Judgment Standards

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Under summary judgment practice, "[t]he moving party bears the burden of proving the absence of a genuine issue of material fact."  In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.  In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id.

If the moving party meets its initial responsibility, the burden shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita

1  Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  In attempting to

2  establish the existence of this factual dispute, the opposing party may not rely upon the

3  allegations or denials of its pleadings but is required to tender evidence of specific facts in the

4  form of affidavits, and/or admissible discovery material, in support of its contention that the

5  dispute exists.  See Fed. R. Civ. P. 56(c).  The opposing party must demonstrate that the fact

6  in contention is material, i.e., a fact "that might affect the outcome of the suit under the

7  governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv.,

8  Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is

9  genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the

10  nonmoving party," Anderson, 477 U.S. at 248.

11        "In evaluating the evidence to determine whether there is a genuine issue of fact, [the

12  court] draw[s] all inferences supported by the evidence in favor of the non-moving party."

13  Walls v. Cent. Costa Cnty. Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (per curiam)

14  (citation omitted).  It is the opposing party's obligation to produce a factual predicate from

15  which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902

16  (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more

17  than simply show that there is some metaphysical doubt as to the material facts."  Matsushita

18  Elec. Indus. Co., 475 U.S. at 586 (citations omitted).  "Where the record is taken as a whole

19  could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine

20  issue for trial.'"  Id. at 587 (quoting First Nat'l Bank of Ariz. v. Cities Servs. Co., 391 U.S.

21  253, 289 (1986)).

22        On a motion for summary judgment, it is inappropriate for the court to weigh evidence

23  or resolve competing inferences.  "In ruling on a motion for summary judgment, the court

24  must leave '[c]redibility determinations, the weighing of the evidence, and the drawing of

25  legitimate inferences from the facts' to the jury."  Foster v. Metropolitan Life Ins. Co., 243 F.

26  App'x 208, 210 (9th Cir. 2007) (quoting Anderson, 477 U.S. at 255).

27  ////

28  ////

4

1       **II.      Material Facts**

2               Defendants filed a Statement of Undisputed Facts ("DSUF") as required by Local Rule

3       260(a) along with their motion for summary judgment.  (ECF No. 32-2.)  Plaintiff's filing in

4       opposition to defendant's motion for summary judgment fails to comply with Rule 260(b).

5       (See ECF No. 37.)  Rule 260(b) requires that a party opposing a motion for summary judgment

6       "shall reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts

7       that are undisputed and deny those that are disputed, including with each denial a citation to the

8       particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or

9       other document relied upon in support of that denial."  Plaintiff filed a copy of the DSUF with

10      his handwritten responses but did not include the requisite citations to the record.  In light of

11      plaintiff's pro se status, the court has reviewed plaintiff's filings in an effort to discern whether

12      he denies any material fact in defendant's statement of undisputed facts.

13              The court is mindful of the Ninth Circuit's instruction that district courts are to

14      "construe liberally motion papers and pleadings filed by pro se inmates and should avoid

15      applying summary judgment rules strictly."  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir.

16      2010).  Accordingly, the court considers the record before it in its entirety despite plaintiff's

17      failure to be in strict compliance with the applicable rules.  However, only those assertions in

18      the opposition that have evidentiary support in the record will be considered.

19                            **A.  Undisputed Facts**

20              On August 20, 2018, plaintiff went to the HDSP medical facility complaining of back

21      pain.  (DSUF (ECF No. 32-2) at ¶ 1.)

22              Plaintiff reports having a chronic history of back pain for the last thirty years, which

23      began after a weightlifting accident.  (DSUF (ECF No. 32-2) at ¶ 2.)

24              After entering the holding cell to await his appointment, plaintiff went "man down" by

25      "slowly . . . plac[ing] himself on the floor of the holding cell."  (DSUF (ECF No. 32-2) at ¶ 3;

26      ECF No. 33, Attch. 2, Pl.'s Depo. Tr., 54:8-11.)

27              Medical staff responded, checked on plaintiff, and took plaintiff's vitals.  (DSUF (ECF

28      No. 32-2) at ¶ 4.)

1    Correctional and medical staff secured plaintiff to a backboard and placed him on a

2    gurney to await transport to the Triage and Treatment Area.  (DSUF (ECF No. 32-2) at ¶ 5.)

3    It is normal procedure for an inmate to be transported to the Triage and Treatment Area if

4    there is not a doctor available at the clinic.  (DSUF (ECF No. 32-2) at ¶ 6.)  In his opposition,

5    plaintiff agreed that this was standard policy, but claimed that the average wait time for transport

6    was fifteen minutes.  (ECF No. 37 at ¶ 6.)  Defendants do not dispute plaintiff's assertion that the

7    average wait time for transport is fifteen minutes (see generally ECF No. 38), but they blame the

8    delay in plaintiff's case on an intervening medical emergency that required medical staff's

9    response.  (Id. at 2.)  Therefore, it is undisputed that it is normal procedure for an inmate to be

10   transported to the Triage and Treatment Area if a doctor is not available at the clinic, and that the

11   average wait time for transport is fifteen minutes.

12   While plaintiff waited on the gurney, an emergency code for another inmate's medical

13   emergency came in over the radio, and staff had to respond to that code.  (DSUF (ECF No. 32-2)

14   at ¶ 7.)

15   After approximately one hour on the gurney without further incident, the RN Rover

16   arrived to transport plaintiff to the Triage and Treatment Area, where plaintiff was seen and

17   treated with pain medication.  (DSUF (ECF No. 32-2) at ¶ 9.)

18   After receiving treatment at the Triage and Treatment Area, plaintiff reported feeling "a

19   lot better."  (DSUF (ECF No. 32-2) at ¶ 10.)

20   Defendants also note that, although plaintiff alleges remaining on the holding cell floor for

21   an hour, he spent approximately half an hour on the floor.  (ECF No. 32 at 11.)  The surveillance

22   footage confirms defendants' timeline, showing that plaintiff went man down at 12:48 p.m. and

23   that staff began preparing to place him on the back board at 1:18 p.m.  (ECF No. 33, Attch. 1, at

24   12:48:31, 1:18:38.).

25   Additionally, plaintiff claims to have a documented history of lower back pain and to have

26   received treatment from the Reno Sport and Spine Institute during his incarceration at HDSP.

27   (ECF No. 1 at 3, 16; ECF No. 33, Pl.'s Depo. Tr., 40:4-17.)  Defendants do not dispute this

28   alleged history and course of treatment or provide countervailing evidence.

1    **III.    Discussion**

2         **A.  Legal Standards – Eighth Amendment**

3         The Eighth Amendment prohibits "cruel and unusual punishments."  Farmer v. Brennan,

4    511 U.S. 825, 832 (1994).  Where a prisoner's Eighth Amendment claims arise in the context of

5    medical care, the prisoner must allege and prove "acts or omissions sufficiently harmful to

6    evidence deliberate indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 106

7    (1976).  An Eighth Amendment medical claim has two elements: "the seriousness of the

8    prisoner's medical need and the nature of the defendant's response to that need."  McGuckin v.

9    Smith, 974 F.2d 1050, 1059 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v.

10   Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

11        A serious medical need exists if the failure to treat the condition could result in further

12   significant injury or the unnecessary and wanton infliction of pain.  Jett v. Penner, 439 F.3d 1091,

13   1096 (9th Cir. 2006).  To act with deliberate indifference, a prison official "must both be aware of

14   facts from which the inference could be drawn that a substantial risk of serious harm exists, and

15   he must also draw the inference."  Farmer, 511 U.S. at 837.  Thus, a defendant is liable if he

16   knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to

17   take reasonable measures to abate it."  Id. at 847.  "It is enough that the official acted or failed to

18   act despite his knowledge of a substantial risk of harm."  Id. at 842.

19        "Indifference 'may appear when prison officials deny, delay or intentionally interfere with

20   medical treatment, or it may be shown by the way in which prison physicians provide medical

21   care.'"  Jett, 439 F.3d at 1096 (quoting Estelle, 429 U.S. at 1059).  To establish a claim of

22   deliberate indifference arising from a delay in providing care, a plaintiff must show that the delay

23   was harmful.  See Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); McGuckin, 974 F.2d at

24   1059; Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990); Shapley v. Nevada Bd. of

25   State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).  In this regard, "[a] prisoner need not

26   show his harm was substantial; however, such would provide additional support for the inmate's

27   claim that the defendant was deliberately indifferent to his needs."  Jett, 439 F.3d at 1096; see

28   also McGuckin, 974 F.2d at 1060.

7

**B. Analysis**

Plaintiff's accusations against defendants are two-fold.  First, he claims that correctional staff defendants failed to properly respond to his medical situation.  In particular, he accuses defendant Shrum of interfering with treatment by encouraging staff to leave him on the holding cell floor and otherwise minimalizing his medical needs.  (ECF No. 1 at 3; ECF No. 33, Pl.'s Depo. Tr., 54:18–57:6.)  He accuses defendants Miles, Stiles, Stone, and Schaake of not "do[ing] anything about C.O. Shrum's action toward plaintiff."  (ECF No. 1 at 5.)  He also claims that defendants Stone and Miles failed to "transport [him] to the [Triage and Treatment Area] in a timely manner," and to "treat [plaintiff] like a human being" or with dignity.  (ECF No. 33, Pl.'s Depo. Tr., 76:16-21, 77:13-22, 78:4-8.)

Second, plaintiff alleges medical staff defendants of failing to provide timely and adequate medical care prior to transport, including by leaving him on the holding cell floor for thirty minutes, leaving him unattended on the gurney for an hour, and failing to try to mitigate his pain while he waited.  (ECF No. 1 at 3; see generally ECF No. 37.)

Third, plaintiff states all defendants laughed and made fun of his situation.  (ECF No. 1 at 3, 5.)  He alleges that he "was left in pain deliberately" by Shrum, Gonzales, Bassett, and Sharpes.  (Id. at 5.)

**1.  Serious medical need**

The undisputed facts show that plaintiff suffered from a serious medical need when he went man down on August 20, 2018.  The presence of a condition that "a reasonable doctor or patient would find important and worthy of comment or treatment," "significantly affects an individual's daily activities," or results in "chronic and substantial pain" is indicative of "a 'serious' need for medical treatment." McGuckin, 974 F.2d at 1059–60.

Here, plaintiff claims to have suffered back pain for three decades and that it interferes with his daily activities.  (DSUF (ECF No. 32-2) at ¶ 2; ECF No. 33, Pl.'s Depo. Tr., 29:20–30:3, 36:5-9.)  Medical staff at HDSP allegedly intermittently prescribed plaintiff medication for this condition, though he was not receiving prescription pain medication as of August 20, 2018.  (ECF No. 33, Pl.'s Depo. Tr., 26:14-21, 27:4-7.)  He also claims to have received treatment at the Reno

8

1   Sport and Spine Institute while incarcerated at HDSP, where he received epidurals, an MRI, and a

2   recommendation for surgery.  (ECF No. 1 at 16; ECF No. 33, Pl.'s Depo. Tr., 40:4-17.)  His

3   condition was such that he wore a vest designating him as "mobility impaired" and used a walker,

4   including when he arrived at the medical unit on August 20.  (ECF No. 33, Pl.'s Depo. Tr., 27:8-

5   23; id., Attch. 1, at 12:22:50.)  Cf. Hawthorne v. Bennington, No. 3:16-cv-00235 RCJ CLB, 2021

6   WL 3506524, at *4 (D. Nev. May 14, 2021) (finding that plaintiff experienced a serious medical

7   need when he suffered a back spasm that caused him severe pain and rendered him immobile);

8   Mason v. Ryan, No. CV 17-08098 PCT DGC (MHB), 2019 WL 1382468, at *19 (D. Ariz. Mar.

9   27, 2019) (finding that plaintiff experienced a serious medical need, where he suffered severe

10  neck pain that affected his daily activities and for which he received "x-rays, MRIs, medications,

11  physical therapy, injections, specialist referrals, and surgery.").

12      Defendants argue that plaintiff "cannot prove that his medical needs were sufficiently

13  serious such that a one or two-hour delay in seeing a provider and getting pain medication

14  amounted to an Eighth Amendment violation," but they do not dispute plaintiff's description of

15  his back condition, its effect on his daily activities, or his treatment history.  (See ECF No. 32 at

16  11.)  Given that plaintiff is the non-moving party and defendants did not provide evidence

17  contradicting his representations about his medical history, the court "must take as true

18  [plaintiff's] sworn statements regarding his pain and symptoms."  Mason, 2019 WL 1382468, at

19  *21; see Scott v. Harris, 550 U.S. 372, 380 (2007).  The undisputed facts therefore establish that

20  plaintiff had a serious medical need.

21                        **2.  Deliberate Indifference**

22      Deliberate indifference requires a showing that prison officials committed "(a) a

23  purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm

24  caused by the indifference."  Jett, 439 F.3d at 1906.  "The requirement of deliberate indifference

25  is less stringent in cases involving a prisoner's medical needs than in other cases involving harm

26  to incarcerated individuals because '[t]he State's responsibility to provide inmates with medical

27  care ordinarily does not conflict with competing administrative concerns.'"  McGuckin, 974 F.2d

28  ////

1    at 1060 (quoting <u>Hudson v. McMillian</u>, 503 U.S. 1, 6 (1992)) (alteration in original).  Defendants

2    deny deliberately ignoring plaintiff's pain on August 20, 2018.  (ECF No. 32 at 12.)

3                    **a.   Whether defendants purposely ignored plaintiff's medical needs**

4              Liberally construing plaintiff's pleading and response to defendants' motion for

5    summary judgment, his Eighth Amendment claim appears to be based on three aspects of the

6    care he received on August 20: (1) the thirty-minute delay in removing him from the floor,

7    which defendants have not explained; (2) his hour-long wait for transport; and (3) medical

8    staff's failure to take steps to mitigate his pain while he awaited transport.

9              Plaintiff's allegations regarding the first issue are assessed below.  However,

10   defendants have shown the absence of a genuine issue of material fact as to the remaining

11   issues.  To the second issue, the parties agree that plaintiff remained on the gurney for an hour

12   due to another prisoner's intervening medical emergency.  (DSUF (ECF No. 32-2) at ¶ 7).

13   Because plaintiff's transport was delayed due to this unforeseen, superseding event, it was not

14   caused by defendants deliberately ignoring plaintiff's medical need.  Plaintiff therefore cannot

15   prevail on his deliberate indifference claim as it concerns the transport delay.  <u>See</u> <u>Shapley v.</u>

16   <u>Nev. Bd. of State Prison Comm'rs</u>, 766 F.2d 404, 407 (9th Cir. 1985) (holding that mere

17   delay, without more, "is insufficient to state a claim of deliberate medical indifference").

18             As to the third issue, defendants state that prison policy required plaintiff's transport to

19   the Triage and Treatment Area because there was no doctor in the clinic when he went man

20   down.  (DSUF (ECF No. 32-2) at ¶ 6.)  Plaintiff has not shown that, as nurses, the medical

21   staff defendants had the authority to treat him while he awaited transport.  <u>See</u> <u>generally</u> <u>Guy</u>

22   <u>v. Bick</u>, No. 2:21-cv-00823-JDP (PC), 2021 WL 2681440, at *2 (E.D. Cal. June 30, 2021)

23   (plaintiff failed to state a cognizable claim against defendant nurse for failing to provide him

24   with pain medication, because as a registered nurse, defendant did not have authority to

25   prescribe medication); <u>Villa v. Rowe</u>, No. C 07-1436 WHA (PR), 2009 WL 4823019, at *6

26   (N.D. Cal. Dec. 10, 2009) (defendant nurses entitled to summary judgment on plaintiff's

27   claim that they inadequately responded to his complaints about his prescribed medication,

28   because as nurses, they did not have the power to prescribe new medication); <u>see</u> <u>also</u>

1   Hawthorne, 2021 WL 3506524, at *5 (plaintiff could not prove deliberate indifference, where

2   medical staff defendants failed to "contact the on-call physician for permission to administer

3   some level of pain medication or muscle relaxer" for plaintiff's back pain, but plaintiff

4   received treatment two days later.  Plaintiff has also failed to specifically identify what steps

5   he believes the medical staff defendants should have taken while he waited on the gurney.

6   Accordingly, no reasonable jury could find that the medical staff defendants acted with

7   deliberate indifference when they did not address plaintiff's pain while he awaited transport.

8          For the reasons provided below, defendants are also entitled to summary judgment on

9   plaintiff's remaining allegation that they deliberately ignored his medical need by leaving him

10  on the holding cell floor for thirty minutes.

11                                   **i. Defendant Bassett**

12         Nurse Bassett appears to have led the medical staff's response after plaintiff went

13  man down.  He states that plaintiff visited the medical unit on August 20 because he had an

14  appointment with Bassett, though he does not identify the reason for the visit.  (ECF No. 32-

15  6 at ¶ 1.)  He "was informed" that plaintiff "was lying on the ground in the holding cell."  (Id.

16  at ¶ 3.)  He went to the holding cell and spoke with plaintiff, who "did not appear to be in

17  acute pain or distress."  (Id.)  Bassett later asked correctional staff to help place plaintiff on

18  the back board, and claims that he "would periodically check on [plaintiff] while [plaintiff]

19  was in the medical clinic." (Id.)

20         Plaintiff has provided no evidence that Bassett subjectively recognized a substantial

21  risk of serious harm to plaintiff.  Plaintiff testified that he yelled for help and expressed

22  experiencing severe pain while he lay on the holding cell floor.  (ECF No. 33, Pl.'s Depo.,

23  51:12-20.)  He stated that he communicated his symptoms directly to Bassett:

24  ////

25  ////

26  ////

27  ////

28  ////

                                              11

> I told him that I was in a lot of pain and I couldn't get up and he . . . seemed like he already knew the answer that I was telling him and he knew the situation but yet he kept on asking me over and over again, you know, the same thing . . .
>
> He knew that it was an emergency situation and the way I should have been treated, yet he was still trying to get me to, you know, just get up . . . on my own accord or, you know what I mean, with very little help.  Even though I was in a lot of pain and I needed to be treated by a doctor . . .

(ECF No. 33, Pl.'s Depo., 82:16-21, 83:4-9.)  However, that plaintiff told Bassett he was in pain does not mean that Bassett shared plaintiff's understanding about the severity or urgency of the situation.  Farmer, 511 U.S. at 837 ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").  Plaintiff also testified that Bassett

> was the one trying to talk to me and trying to coach me into getting up and, you know, he's the one that, you know, again, that interacted with me.  That—you know, that stands out as the incident occurred, and I do remember him talking to me and asking me, you know, can I do this and he was checking—he checked my vitals and made sure—you know, and checked my—I guess my blood pressure and as far as my well-being.

(ECF No. 33, Pl.'s Depo., 82:7-15.)  Although vague, plaintiff's testimony that Bassett coached him to get up, asked "can [he] do this," and took his blood pressure indicates that Bassett evaluated plaintiff and sought to ascertain the extent of his pain.  In his declaration, Bassett states that after speaking with plaintiff, he concluded that plaintiff "did not appear to be in acute pain or distress."  (ECF No. 32-6 at ¶ 3.)  At most, then, the parties' evidence speaks to a difference of opinion regarding plaintiff's condition and the appropriate medical response, which does not establish deliberate indifference.  Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004).

Plaintiff does not offer additional evidence that could demonstrate that Bassett grasped the magnitude of plaintiff's pain on August 20, or that he knew plaintiff suffered from chronic back pain.  As such, plaintiff cannot show that Bassett subjectively knew about his serious medical need and deliberately ignored it.

////

12

1  The undersigned recommends that defendant's motion for summary judgment be granted

2  as to defendant Bassett.

3  ### ii.  Defendant Sharpes

4  Nurse Sharpes was present when staff placed plaintiff on the back board and gurney.

5  (ECF No. 32-9 at ¶ 3.)  She recalls that "[e]verything stopped at the clinic so that they could

6  address [plaintiff's] concern."  (Id.)  She also claims to have checked on plaintiff while he

7  awaited transport.  (Id.)

8  Sharpes's recollection that "[e]verything stopped at the clinic so that they could address

9  [plaintiff's] concern" is inconsistent with the fact that plaintiff remained on the floor for thirty

10  minutes, while staff appeared to attend to other inmates who had not gone man down.  (ECF No.

11  33, Attch. 1, at 12:55:51–12:56:04, 1:03:45–1:05:45.)  It suggests that Sharpes was not aware of

12  how long plaintiff spent on the floor and did not participate in the decision to leave him there for

13  half an hour.  Plaintiff has not provided evidence to the contrary.  Accordingly, the undersigned

14  recommends that the motion for summary judgment be granted as to defendant Sharpes.

15  ### iii. Defendant Gonzales

16  Nurse Gonzales states that she was not present when plaintiff went man down, but she

17  helped secure him to the back board.  (ECF No. 32-4 at ¶ 3.)  As a doctor's nurse, she was not

18  assigned to attend to plaintiff after he was secured to the gurney.  (See id.)  She denies laughing at

19  plaintiff or making inappropriate comments about his medical emergency.  (Id. at ¶ 5.)

20  Surveillance video footage does not show that a nurse was present when plaintiff went

21  man down, thereby confirming that Gonzales was not present, and Officer Shrum states that

22  he notified Nurse Bassett, not Gonzales, immediately after it happened.  (ECF No. 33, Attch.

23  1, at 12:48:31; ECF No. 32-11 at ¶ 3.)  Accordingly, there is no evidence she played any role

24  in the decision to leave plaintiff on the floor for thirty minutes.

25  In his deposition testimony, plaintiff suggests that Nurse Gonzales repeatedly denied

26  him pain medication for his chronic pain prior to August 20, 2018.  (ECF No. 33, Pl.'s Depo.

27  Tr., 86:8-24; ECF No. 40 at 2.)  Even assuming she did, it does not establish that Nurse

28  Gonzales subjectively knew about his condition on August 20 and ignored it.  As discussed

1    above, she was not present when he went man down, and she was not assigned to check on

2    him while he awaited transport.  (See ECF No. 32-4.)  Furthermore, Gonzales could not have

3    wrongfully denied him medication prior to August 20, because she did not have the power to

4    prescribe it to him.  Guy, 2021 WL 2681440, at *2; Villa, 2009 WL 4823019, at *6.

5         Plaintiff has not offered any evidence to counter Gonzales' account.  Accordingly,

6    defendant Gonzales is also entitled to summary judgment.

7                                **iv. Defendant Shrum**

8         Defendant Shrum denies laughing at plaintiff or instructing staff to leave him on the floor.

9    (ECF No. 32-11 at ¶ 5.)  The other defendants deny witnessing Shrum laugh or making such

10   comments.  (ECF No. 32-4 at ¶ 5; ECF No. 32-5 at ¶ 4; ECF No. 32-6 at ¶ 6; ECF No. 32-7 at ¶

11   5; ECF No. 32-8 at ¶ 4; ECF No. 32-9 at ¶ 5; ECF No. 32-10 at ¶ 4.)  Shrum states that he

12   "immediately told RN Bassett", that plaintiff had gone man down.  (ECF No. 32-11 at ¶ 3.)  He

13   also helped place plaintiff on the back board.  (Id.)  Defendants argue that, even if Shrum

14   encouraged medical staff to leave plaintiff on the floor, there is no evidence that he interfered

15   with plaintiff's medical care.  Additionally, while correctional officers—such as Shrum—cannot

16   dictate an inmate's medical treatment, Shrum assisted medical staff when they eventually

17   attended to plaintiff.  (ECF No. 32 at 12–13.)

18        Plaintiff does not accuse Shrum of failing to summon medical staff in a timely manner or

19   dispute that Shrum helped medical staff place him on the back board and gurney.  (ECF No. 1 at

20   3, 5; see generally ECF No. 33, Pl.'s Depo. Tr.; ECF No. 37.)  He alleges that "C.O. Shrum told

21   the medical staff / nurses to leave me on the floor and all of them did for over an hour," but this

22   statement does not contradict defendants' claim that when medical staff did eventually attend to

23   plaintiff, Shrum assisted them.  (ECF No. 1 at 3.)  Additionally, plaintiff has not accused Shrum

24   of physically obstructing medical staff from tending to him.  (See generally ECF No. 1; ECF No.

25   33, Pl.'s Depo. Tr., 51:2–52:9, 54:19–59:5.)

26        The undisputed evidence shows that Shrum did not act with deliberate indifference.

27   California regulations provide that "[o]nly facility-employed health care staff, contractors paid to

28   perform health services for the facility, or persons employed as health care consultants shall be

permitted, within the scope of their licensure, to diagnose illness or prescribe medication and health care treatment for patients." Cal. Code Regs. tit. 15, § 3999.132(a).  "No other personnel or inmates may do so."  <u>Id.</u>  Under this rule, medical staff could not treat Shrum's alleged statements to leave plaintiff on the floor as an order; they had to make their own assessments about plaintiff's condition and the appropriate response.  <u>Id.</u>, § 3999.146; Cal. Code Regs. tit. 16, § 1443.5.  (ECF No. 32 at 11–12.)  Any decision to leave plaintiff on the floor for thirty minutes was therefore made by medical staff, not Shrum.  (<u>Id.</u>)  To this end, Bassett had an opportunity to investigate plaintiff's condition for himself at 12:59 p.m., when he visited the holding cell and could presumably see plaintiff on the floor; it was therefore Bassett's decision to not take immediate action at 12:59 p.m. that delayed plaintiff's removal from the floor until 1:18 p.m., rather than any statements Shrum made.  (ECF No. 33, Attch. 1, at 12:59:00–12:59:30.)

The undisputed facts also show that, even if Shrum did not believe plaintiff was experiencing a serious medical need, Shrum took appropriate action by timely notifying Bassett and helping medical staff attend to plaintiff.  <u>Franklin v. McCaughtry</u>, No. 02–C–618–C, 2004 WL 221982, at *11 (W.D. Wis. Feb. 3, 2004) ("[I]t is [a prison official's] conduct and not his speech that is most probative in showing that a defendant acted with reckless disregard for the inmate's health.").

Shrum's alleged conduct is not the type of conduct that courts have recognized as creating a genuine dispute over whether a correctional officer acted with deliberate indifference to a prisoner's medical needs.  In those cases, prisoners have claimed that a defendant correctional officer failed to summon medical staff or failed to do so in a timely manner.  <u>See</u>, <u>e.g.</u>, <u>Harbridge v. Hickman</u>, No. 1:10-cv-00473 AWI JLT (PC), 2016 WL 561517, at *15 (E.D. Cal. Feb. 12, 2016); <u>Brush v. Woodford</u>, No. 1:07–cv–01009 LJO SKO PC, 2011 WL 573817, at *8 (E.D. Cal. Feb. 15, 2011).  Here, by contrast, the parties do not dispute that Shrum timely summoned medical staff, and there is no evidence that Shrum's statements delayed medical staff's response time.  Accordingly, the undersigned recommends that the motion for summary judgment be granted as to defendant Shrum.

////

**v. Defendants Stone and Stiles**

Stone was present when plaintiff went man down and allegedly asked plaintiff "what was wrong," to which plaintiff responded that his medication had expired.  (ECF No. 32-8 at ¶ 3.)  According to Stone, "We informed the nursing staff that the [plaintiff] was in the holding cell laying down."  (Id.)  He helped place plaintiff on the back board and gurney, at the direction of medical staff.  (Id.)  Stiles was also present when plaintiff went man down and helped place plaintiff on the back board and gurney.  (ECF No. 32-7 at ¶ 3.)

Plaintiff accuses Stone of failing to transport him to the Triage and Treatment Area in a timely manner.  He also accuses Stone of treating him disrespectfully and "allow[ing] Shrum to orchestrate the situation, this illegal situation."  (ECF No. 33, Pl.'s Depo. Tr., 77:19-20.)  Plaintiff claims Stiles violated his rights by failing to "do anything about C.O. Shrum's action toward plaintiff."  (ECF No. 1 at 5.)

With respect to Stone's alleged failure to timely transport plaintiff, there is no evidence that Stone had the authority to transport plaintiff, that he willfully ignored orders to transport him, or that any policy required him to do so.  According to Gonzales and Bassett's declarations, the RN Rover transports inmates to the Triage and Treatment Area, and defendants' brief states that there was a delay in transporting plaintiff because medical staff needed to attend to another inmate's emergency.  (ECF No. 32-4 at ¶ 4; ECF No. 32-6 at ¶ 6; ECF No. 32 at 10, 11.)  It appears that medical staff are primarily responsible for transporting patients to the Triage and Treatment Area, not correctional officers like Stone.  Given that plaintiff lay on the floor due to a serious medical need, it is also not established that the correctional staff defendants had the authority to remove plaintiff from the floor without medical staff's approval.  See Cal. Code Regs. tit. 15, § 3999.132(a).  Plaintiff has not cited any regulation or policy indicating that they could.

Plaintiff also cannot prove that Stone and Stiles acted with deliberate indifference by failing to intervene against Shrum.  For reasons discussed above, no reasonable jury could find that Shrum's alleged statements impeded plaintiff's access to timely and appropriate care.  It follows that Stone and Stiles cannot be held liable for failing to stop Shrum from making these

1    alleged comments.  The undersigned therefore recommends that the motion for summary

2    judgment be granted as to defendants Stone and Stiles.

3                              **vi.  Defendants Schaake and Miles**

4           According to plaintiff, defendant Schaake violated his rights by failing to "do anything

5    about C.O. Shrum's action toward plaintiff."  (ECF No. 1 at 5.)  Plaintiff testified during his

6    deposition that his accusations against Stone also apply to defendant Miles.  (ECF No. 33, Pl.'s

7    Depo. Tr., 78:4-8.)

8           On August 20, 2018, Schaake was assigned to the medical unit as an escort officer and

9    "was focused on running the medical clinic lines."  (ECF No. 32-10 at ¶ 3.)  Schaake "recall[s] an

10   inmate in the holding cell laying on the ground that day," and states that it would have been

11   protocol for officers to assist medical staff in placing plaintiff on the back board and gurney.  (Id.)

12          Miles "was assigned to work as a clinic Officer" on August 20.  (ECF No. 32-5 at ¶ 3.)

13   He recalls "seeing an inmate in the medical clinic holding cell lying on the ground that day" but

14   was not involved with the inmate's custody or care.  (Id.)  He entered the medical unit "briefly,"

15   then left "shortly thereafter to continue with [his] other duties and assignments that day."  (Id.)

16   He did not speak to plaintiff.  (Id. at ¶ 4.)

17          For the same reasons discussed above, Miles's failure to transport plaintiff does not

18   amount to deliberate indifference.  Correctional officers do not appear to have the authority to

19   transport inmates without medical staff authorization and it is unclear whether they could remove

20   plaintiff from the floor without medical staff's permission.

21          Additionally, Schaake and Miles cannot be held liable for failing to intervene against

22   Shrum because a reasonable jury could not find that Shrum interfered with plaintiff's medical

23   care.  The undersigned therefore recommends that the motion for summary judgment be granted

24   as to defendants Schaake and Miles.

25                              **b.  Plaintiff's alleged harm**

26          Finally, the parties dispute whether the delay harmed plaintiff.  Plaintiff claims that, as a

27   result of defendants' alleged deliberate indifference, he unnecessarily experienced debilitating

28   pain for two hours, suicidal thoughts, nightmares, trauma, and fearfulness of experiencing a

1   similar situation in the future, such that he avoids going to the medical unit for treatment of his

2   chronic pain and other ailments.  (ECF No. 1 at 11; ECF No. 33, Pl.'s Depo. Tr., 91:19–93:15;

3   ECF No. 37 at ¶ 9.)

4        Defendants argue that plaintiff cannot prove that the delay harmed him.  According to

5   defendants, plaintiff must not only show that he suffered harm a result of their delay, but also

6   that he suffered "further injury" due to the delay.  (ECF No. 32 at 10.)

7        Because plaintiff cannot show that defendants acted with deliberate indifference, it is not

8   necessary to decide whether there exists a genuine issue of material fact as to his alleged harm.

9                                    **QUALIFIED IMMUNITY**

10       Defendants also assert qualified immunity.  They argue that no reasonable jury would find

11   that defendants violated plaintiff's Eighth Amendment rights, and that even if he could prevail, "a

12   reasonable official would not have known that Defendants violated the Constitution."  (ECF No.

13   32 at 15.)  Because defendants are entitled to summary judgment on the merits of plaintiff's

14   claim, the court need not decide whether they are also entitled to qualified immunity.  <u>See</u>

15   <u>O'Brien v. Welty</u>, 818 F.3d 920, 936 (9th Cir. 2016); <u>Moreland v. Las Vegas Metro. Police</u>

16   <u>Dep't</u>, 159 F.3d 365, 371 n.4 (9th Cir. 1998).

17                                      **CONCLUSION**

18       For the reasons set forth above, IT IS HEREBY ORDERED that the court's July 17, 2023

19   findings and recommendations (ECF No. 39) are vacated.

20       IT IS RECOMMENDED that:

21       1.  Defendants' motion for summary judgment (ECF No. 32) be granted; and

22       2.  The Clerk of the Court be directed to close this case.

23       These findings and recommendations will be submitted to the United States District Judge

24   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty days

25   after being served with these findings and recommendations, either party may file written

26   objections with the court.  The document should be captioned "Objections to Magistrate Judge's

27   Findings and Recommendations."  The parties are advised that failure to file objections within the

28   ////

specified time may result in waiver of the right to appeal the district court's order.  Martinez v.

Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  September 14, 2023

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DB:15
DB/DB Prisoner Inbox/Civil Rights/S/cast2030.vac.fr